

FILED

JAN 17 2023

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re:<br>METAL RECOVERY SOLUTIONS, INC.,<br>Debtor. | BAP No. NV-22-1081-BFL<br><br>Bk. No. 3:20-50660-GS |
| DIFFERENTIAL ENGINEERING INC.,<br>Appellant,<br>v.<br>GEO-LOGIC ASSOCIATES, INC.;<br>CHRISTOPHER BURKE, Chapter 7<br>Trustee,<br>Appellees. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Gary A. Spraker, Bankruptcy Judge, Presiding

Before: BRAND, FARIS, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Dr. Thom Seal is the sole shareholder and president of Appellant Differential Engineering, Inc. ("Differential"), and he and his wife own the debtor, Metal Recovery Solutions, Inc. ("MRS" or "Debtor"). For years prior to the bankruptcy case, Dr. Seal provided consulting services to MRS pursuant to a consulting agreement. This agreement included the use of specialized

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

"Hydro-Jex" technology. Ultimately, Dr. Seal obtained a patent for that technology and he caused MRS to enter into a patent license agreement with Differential which provided for the retroactive payment of patent license fees. Thereafter, Geo-Logic Associates, Inc. ("GLA"), a creditor of MRS, obtained an arbitration award that was entered as a judgment against MRS. At around the time of the arbitration award, MRS signed promissory notes in favor of Differential for the amounts allegedly owed to Differential under the two agreements and provided UCC-1 financing statements to secure the notes. In addition, Dr. Seal caused MRS to make distributions of $1.2 million to himself and his wife as shareholders of MRS.

After MRS filed a chapter 7[1] case, Differential filed two claims: one for the consulting fees and the other for the patent license fees. Each claim was supported by the promissory note and UCC-1 financing statement. GLA objected to the claims. The bankruptcy court sustained the objection to the claims and Differential appealed.

Insider claims, such as these, are subject to rigorous scrutiny. An insider that files a claim must establish the existence of the debt by credible and reliable evidence. The insider has the burden to prove the good faith of the transaction and its inherent fairness, showing that the transaction carries the earmarks of an arms-length bargain. Here, after an evidentiary hearing, the bankruptcy court determined that Differential did not satisfy its burden with

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

respect to either claim. We discern no error.

Differential argued that the court did not find that GLA had rebutted the presumption of prima facie validity of its claims. As a result, Differential asserted that the court should not have looked behind the promissory notes at the underlying obligations that formed the basis of the notes to determine the claims. But, as with its other arguments, Differential misstates the record. The bankruptcy court correctly concluded that GLA had rebutted the prima facie validity of the claims, and it was proper for the court to consider the underlying obligations in making its determination. Finding no error in the bankruptcy court's ruling, we AFFIRM.

## FACTS

### A.    The parties and prior litigation

Dr. Seal has a PhD in Mining-Metallurgical Engineering and has been in the mining business for over 40 years. He has several patents on the subject of heap leach mining, including the Hydro-Jex technology. Differential, formed by Dr. Seal in 2008, holds the patent to the Hydro-Jex technology.

MRS was formed in 2009 to build and operate the Hydro-Jex technology. By 2015, Dr. Seal owned 95% of MRS; his wife more recently owned the remaining 5%. Dr. Seal served as a director of MRS from 2010 to 2020 and as president from 2011 to 2020; Mrs. Seal served as secretary/treasurer from 2017 to 2020 and was also a board member.

In 2015, MRS contracted with GLA, an international geological, geotechnical, civil, and environmental firm, for GLA's assistance with a

mining project in Mexico using the Hydro-Jex technology. GLA later sued
MRS over the Mexico project.

In 2019, an arbitration award was entered in favor of GLA and against
MRS for $2,037,586 (plus interest). The district court confirmed the arbitration
award in January 2020, which MRS appealed and has not paid. While the
arbitration award was pending confirmation, GLA moved for an injunction to
prevent MRS from distributing its assets. In opposition, Dr. Seal stated in a
sworn declaration that "MRS has, without exception, paid every uncontested
bill that was due and owing since its inception." The injunction was denied.
GLA later discovered that the Seals caused MRS to make $1.2 million in
equity distributions to themselves – $1 million just before the arbitration
hearing and $200,000 shortly afterward. GLA then sued MRS, Differential,
and the Seals to avoid certain transfers and declare them alter egos of each
other. That matter was stayed once MRS filed its bankruptcy case.

**B.    Business dealings between Differential and MRS**

In February 2010, Differential and MRS entered into a consulting
agreement, wherein Differential agreed to provide consulting services by
Dr. Seal to MRS for $11,666 monthly. Later that year, the 2010 contract was
amended by MRS's board to increase Differential's monthly fee to $11,711 and
to authorize Differential to perform the daily operations for MRS.

In May 2011, MRS's board of directors approved a second contract
between Differential and MRS ("Contract") which provided a more detailed
description of Dr. Seal's services for MRS. The Contract was for a term of five

years unless mutually extended by the parties. The monthly fee arrangement with Differential remained unchanged, but now Differential would receive an annual bonus of 50% of MRS's pre-tax profits. Ultimately, however, all approved annual bonuses were a flat fee of $60,000 without regard to profitability. Both entities' board meeting minutes from 2012 to 2018 provided for renewal of the Contract.

Board meetings were held by MRS and Differential. Of note, MRS's board meeting minutes from 2013 included the following notation: "Differential Engineering: Track as a note between [Differential] and MRS the monthly fee and bonus if not enough funds to maintain capital to do a job." MRS's minutes from 2015 acknowledged that the monthly fee included use of the Hydro-Jex patent, but provided that once the patent's market value was determined, MRS would owe Differential additional patent license fees. Differential's 2015 minutes contained similar language but noted that the additional patent license fees would be owed "retroactively." MRS's 2018 minutes reflected approval of the equity distributions to the Seals but noted that MRS would still have enough capital for three years of operations. The 2019 minutes for both MRS and Differential discussed MRS's execution of promissory notes and UCC-1 filings for its outstanding debts to Differential. MRS's 2019 minutes noted that MRS was under a "veil of insolvency" due to the Differential notes and GLA's arbitration award.

## C.    The bankruptcy filing and claims objection

MRS filed a chapter 7 bankruptcy case on July 6, 2020. Differential and

GLA were the only secured creditors. MRS had few general unsecured creditors with relatively small debts in comparison. Christopher Burke was appointed as the chapter 7 trustee ("Trustee").

Differential filed two secured proofs of claim in MRS's case: one for $958,707 for "Consulting Fees per Contract" ("Consulting Claim") and the other for $776,858 for a "Patent License" ("Patent Claim"). Attached to each claim was a promissory note in favor of Differential, dated January 11 and July 19, 2019, respectively, with both notes due and payable on January 3, 2022. The notes, signed by Dr. Seal for Differential and Mrs. Seal for MRS, did not describe the nature of the debts but stated that they were secured by cash and two mining trailers. Also attached to each claim was a UCC-1 financing statement in favor of Differential. The UCC-1 attached to the Consulting Claim stated that the amount owed was "for services rendered and invoiced by [Differential] and not paid." The UCC-1 attached to the Patent Claim stated that the amount owed was "for patent license fee used since June, 2015 and has not paid [sic] as of Aug 1, 2019." Also attached to the Consulting Claim was an "Account Payable Report" ("Report") identifying unpaid monthly fees and annual bonuses owed to Differential by MRS for every year from 2011 to 2018, except 2016. No accounting was attached to the Patent Claim to identify how the amount outstanding was calculated.

Differential's claims were heavily contested by GLA. The dispute involved significant discovery, briefing, and a three-day evidentiary hearing. Initially, GLA argued that the claims lacked evidentiary support and that

6

Differential should have attached the underlying bases for the notes – i.e., the Contract and any patent fee agreement or patent license. GLA also argued that neither entity recognized any real debt to Differential. GLA argued that Differential's claims were contradicted by Dr. Seal's earlier testimony, where he stated that MRS paid every uncontested bill that was due and owing since its inception. And GLA further argued that the claims were in conflict with the $1.2 million in equity distributions MRS made to the Seals in 2019; if MRS owed Differential, it should have paid it as a creditor instead of making equity distributions.

In response, Differential maintained that it did not have to produce the underlying agreements between it and MRS in support of the claims because the parties executed promissory notes for the consulting fees and patent license fees. Differential explained that it did not bill MRS for consulting services unless MRS had sufficient cash – an arrangement approved by Differential in 2015. If an entry for a monthly consulting fee or a year-end bonus appeared on the Report, that meant MRS was not billed by Differential for that fee or bonus and did not pay it. In contrast, if a monthly consulting fee or year-end bonus did not appear on the Report, then it was invoiced to MRS and MRS paid it.[2] Further, MRS used the "cash accounting" method, which explained the lack of any accounts payable entries for Differential in MRS's books or tax returns. Finally, Differential expressed concern about

---

[2] Per the Report, the only amount owed to Differential for 2017 was the $60,000 annual bonus. However, this contradicted another MRS document which showed that this bonus had been paid by check.

GLA's discovery methods, Trustee's pending adversary proceeding,[3] and the "pending proceeding rule."

Dr. Seal was the sole testifying witness at the evidentiary hearing. After post-hearing briefs were filed, the bankruptcy court entered its Memorandum Decision and Order disallowing Differential's claims in their entirety. This timely appeal followed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.      Did the bankruptcy court err in finding that GLA presented sufficient evidence to rebut the presumptive validity of Differential's claims?

2.      Did the bankruptcy court err in disallowing the Consulting Claim and the Patent Claim?

## STANDARDS OF REVIEW

Claims objection appeals can involve both legal and factual issues. We review the legal issues de novo and the factual issues for clear error. *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal),* 450 B.R. 897, 918 (9th Cir. BAP 2011). Whether the bankruptcy court identified and applied the correct burden of proof is a question of law we review de novo. *Margulies Law Firm v.*

---

[3] After GLA filed the claims objection, Trustee filed an adversary complaint against Debtor, Differential, the Seals, and a former CFO for Debtor. He alleged several claims, including fraudulent transfer, preference, and alter ego. He also challenged the validity of Differential's UCC-1 liens, alleging that they were not perfected.

*Placide (In re Placide)*, 459 B.R. 64, 71 (9th Cir. BAP 2011). Whether the evidence sufficiently rebutted the evidentiary presumption under Rule 3001(f), however, is a question of fact reviewed for clear error. *Garner v. Shier (In re Garner)*, 246 B.R. 617, 619 (9th Cir. BAP 2000) (citing *Sierra Steel, Inc. v. Totten Tubes, Inc. (In re Sierra Steel, Inc.)*, 96 B.R. 275, 277 (9th Cir. BAP 1989)).

A bankruptcy court's factual findings are not clearly erroneous unless they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

## DISCUSSION

**A.    Legal standards for claims litigation**

A claim is deemed allowed absent objection from a party in interest. § 502(a). A procedurally compliant proof of claim is prima facie evidence of the validity and amount of the claim. Rule 3001(f). "A mere formal claim objection, without evidence, cannot defeat a claim presumed to be valid under Rule 3001(f)." *Shin v. Altman (In re Desert Springs Fin., LLC)*, BAP No. CC-16-1374-KuFL, 2017 WL 1434403, at *5 (9th Cir. BAP Apr. 20, 2017) (citing *Lundell v. Anchor Constr. Specialists, Inc.)*, 223 F.3d 1035, 1039 (9th Cir. 2000)).

> To defeat a prima facie valid claim under section 502, the objector must come forward with sufficient evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The ultimate burden of persuasion remains at all times upon the claimant.

*In re Placide,* 459 B.R. at 72 (cleaned up).

This same burden shifting process applies to the claims of insiders. An insider's claim is entitled to the presumption of validity in Rule 3001(f). *In re Desert Springs Fin., LLC,* 2017 WL 1434403, at *7 (citing *Stancill v. Harford Sands Inc. (In re Harford Sands Inc.),* 372 F.3d 637, 640-41 (4th Cir. 2004); *McGee v. O'Connor (In re O'Connor),* 153 F.3d 258, 260-61 (5th Cir. 1998)).

"However, because of the influence and control an insider may wield, an insider's transactions with a debtor are subject to rigorous or strict scrutiny." *Schlossberg v. Abell (In re Abell),* 549 B.R. 631, 669 (Bankr. D. Md. 2016) (citing *In re Harford Sands Inc.,* 372 F.3d at 641); s*ee also Pepper v. Litton,* 308 U.S. 295, 306-07 (1939) (insider transactions are "subjected to rigorous scrutiny" and the insider claimant has the additional burden of proving "the good faith of the transaction" and "its inherent fairness;" the test is "whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain"); *Brewer v. Erwin & Erwin, P.C. (In re Marquam Inv. Corp.),* 942 F.2d 1462, 1465 (9th Cir. 1991). If the objecting party presents material evidence of unfair conduct which rebuts the prima facie validity of the insider claim, the "burden is on an insider claimant to show the inherent fairness and good faith of the challenged transaction." *In re Abell,* 549 B.R. at 670 (quoting *In re Harford Sands Inc.,* 372 F.3d at 641); *accord In re Desert Springs Fin., LLC,* 2017 WL 1434403, at *7-8 (recognizing the additional burden on insiders under *Pepper* and *Marquam* if the objector successfully rebuts the presumption).

**B.    The bankruptcy court did not err in finding that GLA presented sufficient evidence to rebut the presumptive validity of  Differential's claims**.

As an initial matter, and over GLA's objection, the bankruptcy court found that the promissory notes and UCC-1s attached to the Consulting Claim and the Patent Claim, plus the Report attached to the Consulting Claim, were prima facie evidence of the validity and amounts of the claims under Rule 3001(f). The court then found that GLA successfully rebutted the evidentiary presumption as to both claims.

Differential makes several related, and at times contradictory, arguments on appeal. First, Differential argues that the bankruptcy court did not specifically rule that GLA had met its own burden in its objection, so therefore the burden should never have shifted to Differential to defend its claims. Alternatively, Differential contends the bankruptcy court ruled that its insider status eliminated GLA's burden to rebut the presumption of validity and obligated Differential to provide additional documentation. Along this same line, Differential argues that the bankruptcy court completely ignored the sufficiency of what was attached to the claims and conducted its own, "unwarranted" investigation into prior dealings between MRS and Differential. Put simply, Differential disagrees with the bankruptcy court's supported ruling that GLA successfully rebutted the evidentiary presumption, which then allowed for review of the underlying debt represented by the notes and shifted the burden to Differential to establish the validity of the debt that provided the basis for its claims. That Differential

11

disagrees with the court's findings in support of its decision does not constitute reversible error. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) (if there are two permissible views of the evidence, the trial judge's choice between them cannot be clearly erroneous).

On this record, we see no clear error in the bankruptcy court's findings that GLA rebutted the evidentiary presumption so as to shift the burden to Differential to prove the validity of its claims.

## C.    The bankruptcy court did not err in disallowing the Consulting Claim and the Patent Claim.

### 1.    The Consulting Claim

Section 502(b)(4) provides that a claim must be disallowed where it is for "services" of an insider and exceeds the reasonable value of the services. Under § 502(b)(4), the insider claimant "bears the burden of proof on the question of reasonableness of compensation for services." *In re Placide*, 459 B.R. at 72 (citations omitted).

However, before the court reaches the issue of "reasonableness," it must first examine the evidence presented in support of the insider claim:

> A claim by an insider must be carefully examined, and the obligation of the Debtor to the insider claimant must be established, in the first instance, by credible and reliable evidence. If the debt, liability or obligation of the Debtor to the insider claimant is not established by credible and reliable evidence, the claim must be disallowed. **It is only after the debt is established by credible and reliable evidence that § 502(b)(4) and the reasonable value of an insider's services become an issue.**

12

*Boehm v. Aton Components, Inc. (In re Aton Components, Inc.)*, 99 F.3d 1138, at *1 (6th Cir. 1996) (table) (emphasis added); *see also In re Lani Bird, Inc.*, 129 B.R. 203, 206 (Bankr. D. Haw. 1991).

The bankruptcy court found that the Consulting Claim lacked the inherent fairness and good faith required for allowance of an insider services claim under § 502(b)(4), as did the debt accrued and captured in the promissory note. There was ample evidence in the record to support this finding.

The Contract required monthly payments of $11,711 and annual bonuses equal to 50% of MRS's pre-tax profits. As to the bonuses, the court found that the $60,000 bonuses were inconsistent with the Contract which required that they be paid only if MRS was profitable and were to be calculated based on the amount of profit. The only evidence supporting the bonus charges were board meeting minute entries for MRS and Differential that routinely referenced approval of them. There was no discussion as to the basis for the bonus or its calculation. To the extent the bonus obligations were simply issued by fiat of MRS in favor of Differential, the court found that there was no basis to evaluate the reasonableness of that commitment. There was also no evidence as to what Differential actually did to earn any bonus or why MRS should pay one.

Regarding the monthly consulting fee, the court noted that Dr. Seal was unable to answer the question of how and on what basis it was decided when MRS had sufficient operating capital to warrant making payments to

Differential. When MRS did appear to have sufficient cash reserves in 2016 and 2017, Dr. Seal could not explain why it paid Differential only the current monthly fees and not the outstanding balances owed from 2011 through 2015. The $1.2 million distributed to the Seals in 2019 further established that MRS had sufficient cash to pay the entire balance due under the Contract but chose to pay its owners rather than its putative creditor Differential.[4]

The court also found that the Report for the Consulting Claim lacked any indicia of reliability. There was no testimony as to who, or how, the Report was kept. Dr. Seal said he could not recall what documents he relied upon to produce the Report. And there was no payment history detailing when and how Contract payments were made.

When confronted with his prior district court testimony, that MRS paid every uncontested bill since its inception, Dr. Seal testified that he did not consider the notes to Differential when he made that statement because they were not "bills." Yet, Dr. Seal testified just moments earlier that he considered the promissory note to be a "bill" for Differential's consulting services. The court found Dr. Seal's explanation for the conflicting testimony "mere sophistry." In sum, the court found that Dr. Seal's testimony about uncontested bills confirmed what the intermittent payment history showed: whether acting as Differential or MRS, Dr. Seal considered the Contract to be a

---

[4] The bankruptcy court found Dr. Seal's testimony "evasive and unpersuasive" on the questions of how he determined when MRS had enough money for Differential to invoice it for the monthly amounts and what accountant advised him to authorize $1.2 million in shareholder distributions to the Seals. In contrast, Dr. Seal displayed a "sharp memory" for details regarding the Hydro-Jex technology.

convenience rather than a true debt, and it was not until the arbitration was heading toward a hearing that MRS rolled the past due amount into a note. To that end, the court observed that MRS's agreement to enter into a promissory note was at odds with the agreement that MRS need only pay Differential when it had sufficient cash.

The court was further troubled by Dr. Seal's testimony that Differential's practice of receiving intermittent payments was designed to keep MRS from triggering the default provision of the Contract, because he wanted MRS to have a "good record of payment" when it came time to sell the business. The court found Dr. Seal's testimony to be the "very definition of an insider preference, not only by choosing not to enforce Differential's contractual rights immediately, but by also continuing a non-performing contract." The court opined that neither of these accommodations would have been provided in an arms-length transaction, and that the intentional manipulation of MRS's payment obligations would be tantamount to commercial fraud by any third party that considered MRS's finances.

Given the above, the court found that any obligation for MRS to pay was either barred by Differential's agreement that the obligation would not come due until MRS had sufficient cash reserves, or it did not satisfy the strict scrutiny requirements for an insider claim under § 502(b)(4).

As a separate and independent basis for disallowing the Consulting Claim, the court found that the Contract was illusory. Differential chose not to require any payments from MRS on its deficiency even when MRS had the

funds to do so. Thus, Dr. Seal chose not to have MRS perform its alleged contract obligations, and Differential was charged with Dr. Seal's knowledge. This failure to pay demonstrated that the Contract between MRS and Differential was illusory. But even if not illusory, the court found that the amounts sought by Differential were simply not owed under the Contract because MRS had insufficient cash and no working capital. The court's ruling to sustain the objection to the Consulting Claim was well supported by the record.

### 2.    The Patent Claim

Section 502(b)(1) provides that the court shall determine the amount of a claim and shall allow such claim except to the extent that it is "unenforceable against the debtor or property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."

The Patent Claim consisted of the retroactive calculation of patent license fees owed by MRS to Differential. While not attached to the Patent Claim, Differential offered at the evidentiary hearing a spreadsheet showing the $776,858 it claimed was owed by MRS for fees accruing from June 2015, when the patent was issued, through July 2019, when Differential began licensing the Hydro-Jex patent to Jex Technologies, Inc. and its market value was finally established. Dr. Seal explained that these monthly fees were due whether or not MRS used the patent, and the amount of each monthly fee was based upon the market price of eleven ounces of gold.

The bankruptcy court disallowed the Patent Claim on two grounds. First, the patent license agreement as memorialized in the MRS board meeting minutes lacked valid consideration and was therefore unenforceable. Second, even if a valid patent license agreement existed, under the rigorous scrutiny applied to insider claims, the evidence presented was not sufficient to prove that Differential was entitled to a retroactive claim for patent license fees.

Again, the court's findings were well supported in the record. Differential asserted that the basis for the obligation to pay patent license fees was the Contract as modified later in board meeting minutes. The court first found that the Contract provided MRS the right to use the Hydro-Jex technology in exchange for the established monthly consulting fee of $11,711. The Contract did not include any language about additional fees for a patent license. Those discussions were contained only in the board meeting minutes for Differential and MRS. Because there was no provision in the Contract for additional fees to be paid once Differential patented the technology MRS was already using, much less to apply those fees retroactively, the court concluded that the charging of these fees required a new contract. Therefore, under the pre-existing duty rule, the court found that Differential could not retroactively compel MRS to pay more for something that it already had a right to use.

In addition, the court found that the Patent Claim lacked the inherent fairness and good faith required for a claim by an insider. On that point, the court found that the retroactive nature of MRS's obligation to pay for technology it already had the right to use was not consistent with third-party,

arm's-length deals. Rather, this was something that could only arise between insiders, particularly those controlled by the same principals. The court noted that, because the Contract effectively gave Differential control of every aspect of MRS, MRS had no power to negotiate or protect itself in this transaction, and an agreement for retroactive contractual liability was contrary to its financials interests. In the court's opinion, no bona fide business could, or would, operate under such conditions.

### 3.    Differential's contentions on appeal

Differential raises several arguments for why we should reverse the bankruptcy court's order. First, Differential argues that the majority of the legal arguments in the Memorandum Decision were either not raised directly by GLA in the initial claims objection, or they were products of the court extrapolating later-raised arguments by GLA, Trustee, or the court itself. For example, argues Differential, the court impermissibly "broadened" GLA's argument that the claims were not supported by sufficient documentation, to that it was the underlying debt recognized by the promissory notes that GLA was actually challenging. While GLA challenged the sufficiency of the documentation attached to the claims, it also argued that the claims did not withstand the strict scrutiny applied to insider claims and that MRS and Differential never recognized any real debt to Differential. Differential even acknowledges that one of GLA's initial objections was that Differential could not establish any basis for its claims for consulting services or patent license fees.

To the extent GLA further supported its objections with evidence gathered during discovery or admitted at the evidentiary hearing, this is not surprising, and it certainly was not prejudicial since Differential had the opportunity to address it. Any perceived "new arguments" raised by the bankruptcy court were merely extensions of and entirely consistent with the fundamental basis of GLA's objections – the claims did not represent real debt, and they were not inherently fair, in good faith, or arm's length.

Differential asserts that GLA's arguments that were related to the alter ego action or Trustee's adversary should not have been raised in the claims objection or considered by the court. But, Differential fails to articulate exactly what these impermissible arguments were. In any event, the fact of Dr. Seal's total control of Differential and MRS was highly relevant to GLA's claims objection and went to the heart of the fairness, good faith, and arm's length nature of the claims. That it is also relevant to the alter ego issues and adversary complaint did not preclude the court from considering it in this matter.

Differential next argues that the bankruptcy court erred in disallowing the Patent Claim in its entirety. We have already overruled Differential's first argument here, that the court erred by looking beyond the four corners of the promissory notes to disallow the claim. Differential's next argument makes no sense. It argues that the court erroneously found that the promissory note was not supported by consideration. The court made no such finding as to the promissory note. Rather, it found that Differential's attempt to retroactively

charge MRS a license fee for a patent that it already had the right to use lacked consideration. Whether consideration for the promissory note was the provision of a security interest was not relevant because, as the court held, the debt secured was simply not owed by MRS.[5]

Next, Differential argues that the bankruptcy court should not have disallowed the claims in their entirety, but rather should have modified them to their reasonable value. No one has disputed that significant time and money was spent by Dr. Seal, MRS, and Differential on MRS's mining projects and that, at times, the projects were profitable. But based on the evidence and case law, we see no error in the court's decision to reject them outright as opposed to modifying them to their reasonable value. After a painstaking analysis, the court found that Differential failed to establish either debt with credible and reliable evidence, which Differential has not demonstrated was a clearly erroneous finding. Consequently, the court did not need to consider or determine the reasonable value of Differential's services. *See In re Aton Components, Inc.*, 99 F.3d 1138, at *1; *In re Lani Bird, Inc.*, 129 B.R. at 206.

Differential's next arguments also fall flat. First, Differential argues that it was a clear violation of the pending proceeding rule to allow GLA to proceed with its Rule 2004 examinations and other related discovery for its claims objection, when Trustee's adversary involved the same or substantially similar subject matter. When an adversary proceeding or contested matter has

---

[5] Differential does not address the court's alternate basis for disallowing the Patent Claim – that it lacked the inherent fairness and good faith required for an insider claim.

been commenced during the bankruptcy, those matters become pending proceedings subject to the so-called "pending proceeding rule." The rule stands for the proposition that if an adversary proceeding or a contested matter is pending and related to the instant dispute, then the parties to that proceeding or matter may no longer utilize the liberal provisions of Rule 2004 and should utilize the discovery devices provided for in Rules 7026 through 7037. *In re Art & Architecture Books of the 21st Century*, No. 2:13-BK-14135-RK, 2019 WL 9243053, at *6 (Bankr. C.D. Cal. Dec. 6, 2019) (citing *In re Nat'l Risk Assessment, Inc.*, 547 B.R. 63, 65 (Bankr. W.D.N.Y. 2016)). The concern is that parties could use Rule 2004 examinations as a tactic to circumvent the safeguards provided by Rules 7026 through 7037, such as the right to have counsel present, the right to cross-examine witnesses, the greater rights to object to immaterial or improper questions, and the right to have issues defined beforehand. *See In re Dinubilo,* 177 B.R. 932, 939-40 (E.D. Cal. 1993).

What Differential fails to mention is that GLA noticed Dr. Seal's depositions (as representative for Debtor and for Differential) under Rule 7030 and Civil Rule 30(b)(6), not Rule 2004. In addition, Dr. Seal was represented by counsel at his deposition, and his counsel lodged several objections on the record, instructing Dr. Seal not to answer some of the questions. GLA also noticed its request for production under Rule 7026 and Civil Rule 26.

We also reject Differential's repeated arguments that GLA's claims objection and Trustee's adversary complaint were improperly seeking the same relief and that GLA's claims objection required an adversary proceeding.

As Differential knows, Trustee was challenging only the liens securing its claims, alleging that Differential had failed to perfect its UCC-1 liens, and thus the claims, if found to be allowed, would be unsecured. Conversely, GLA was challenging the underlying claims themselves and their amounts, not the liens securing them. Moreover, because GLA's claims objection was not challenging the validity, priority or extent of a security interest, an adversary proceeding was not required.

The bankruptcy court recognized the distinction between the two matters, and that its rejection of Differential's claims essentially renders moot Trustee's complaint as to the purported security interests is simply the consequence of litigation. And Differential's perceived "prejudice" as to itself, MRS, and Dr. Seal in other matters such as Trustee's adversary, the pending appeal of the arbitration award, or the stayed district court action is not well-taken. The facts are what they are. That they might also be relevant to or impact other proceedings against Differential, MRS, or the Seals was no reason to preclude the bankruptcy court from considering them. Differential has not cited any authority to the contrary.

Finally, Differential argues that the bankruptcy court erred by considering Trustee's impromptu illusory contract argument made in closing statement at the evidentiary hearing. Differential argues that its counsel was "ambushed" by Trustee's counsel's argument, and though he made every effort to respond, he had not reviewed the authority cited by Trustee's counsel

and was not aware that this, or the related "lack of consideration" argument, were going to be raised.

While the term "illusory contract" was first raised in closing statements at the evidentiary hearing, it was actually GLA's counsel who first raised it. He argued that the "pay when able" arrangement between MRS and Differential was "a classic example of an illusory promise" and so the claims were unenforceable. Trustee's counsel then expounded on this argument, citing the cases Differential references. When Differential's counsel noted in his closing statement that this was a new argument being raised by GLA and Trustee, the court agreed that the term illusory contract had not previously been used, but noted that the "concept" was "embedded in this."

In any event, what Differential does not mention is that it addressed this argument in its post-hearing brief. Its counsel also gave a commendable off-the-cuff opposing argument in his closing statement at the evidentiary hearing. Thus, any perceived "ambush" against Differential was alleviated with these opportunities for it to be heard on the subject. *See Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) ("fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner") (cleaned up).

## CONCLUSION

For the reasons stated above, we AFFIRM.

23

FILED

JAN 17 2023

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

### UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

---

In re: METAL RECOVERY SOLUTIONS, INC.

Debtor

------------------------------

DIFFERENTIAL ENGINEERING INC.

Appellant

v.

GEO-LOGIC ASSOCIATES, INC.;
CHRISTOPHER BURKE, Attorney, Chapter
7 Trustee

Appellees

BAP No. NV-22-1081-BFL

Bankr. No. 3:20-bk-50660-GS
Chapter 7

January 17, 2023

---

### JUDGMENT

ON APPEAL from the United States Bankruptcy Court for Nevada - Reno.

THIS CAUSE came on to be heard on the record from the above court.

ON CONSIDERATION WHEREOF, it is ordered and adjudged by this Panel that the
judgment of the Bankruptcy Court is AFFIRMED.

### FOR THE PANEL,

Susan M Spraul
Clerk of Court
**By:** Cecil Lizandro Silva, Deputy Clerk

**Date:** January 17, 2023

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

---

In re: METAL RECOVERY SOLUTIONS, INC.

Debtor

------------------------------

DIFFERENTIAL ENGINEERING INC.

Appellant

v.

GEO-LOGIC ASSOCIATES, INC.;
CHRISTOPHER BURKE, Attorney, Chapter
7 Trustee

Appellees

BAP No. NV-22-1081-BFL

Bankr. No. 3:20-bk-50660-GS
Chapter 7

February 7, 2023

---

## PROOF OF SERVICE OF MANDATE

A certified copy of the attached judgment was sent to:

CLERK
U.S. BANKRUPTCY COURT

BkCt, Reno
U.S. Bankruptcy Court
C. Clifton Young Federal Bldg and United States Courthouse
300 Booth Street
Room 1109
Reno, NV 89502-1316

Honorable Gary A. Spraker
U.S. Bankruptcy Court
Old Federal Building
605 West Fourth Avenue
Room 138
Anchorage, AK 99501-2248

on February 7, 2023
By: Cecil Lizandro Silva, Deputy Clerk

FILED

JAN 17 2023

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re: METAL RECOVERY SOLUTIONS, INC.

Debtor

------------------------------

DIFFERENTIAL ENGINEERING INC.

Appellant

v.

GEO-LOGIC ASSOCIATES, INC.;
CHRISTOPHER BURKE, Attorney, Chapter
7 Trustee

Appellees

BAP No. NV-22-1081-BFL

Bankr. No. 3:20-bk-50660-GS
Chapter 7

January 17, 2023

## JUDGMENT

ON APPEAL from the United States Bankruptcy Court for Nevada - Reno.

THIS CAUSE came on to be heard on the record from the above court.

ON CONSIDERATION WHEREOF, it is ordered and adjudged by this Panel that the judgment of the Bankruptcy Court is AFFIRMED.

### FOR THE PANEL,

Susan M Spraul
Clerk of Court
**By:** Cecil Lizandro Silva, Deputy Clerk

**Date:** January 17, 2023

BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT
A True Copy
Attest:

Susan M. Spraul, Clerk

Cecil L. Silva Jr.
by Deputy Clerk                DATE: 2/7/2023