FLETCHER & LEE
Elizabeth Fletcher, Esq.
Nevada Bar No. 10082
448 Ridge Street
Reno, Nevada 89501
Telephone: 775.324.1011
Email: efletcher@fletcherlawgroup.com

Attorneys for Thom and Jette Seal

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>METAL RECOVERY SOLUTIONS, INC.,<br>    *aka* MRS, INC,<br><br>    Debtor. | Case No. 20-50660-gs<br><br>Chapter 7 Case |
| CHRISTOPHER P. BURKE, in his capacity as Chapter 7 Trustee of METAL RECOVERY SOLUTIONS, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>METAL RECOVERY SOLUTIONS, INC., aka MRS, Inc., THOMAS SEAL, JETTE SEAL, DIFFERENTIAL ENGINEERING, Inc, a Nevada corporation, and MARK SHONNARD,<br><br>    Defendants. | Adv. Proc. No. 21-05066-gs<br><br>**DECLARATION OF THOM SEAL, PH.D. IN SUPPORT OF GOOD FAITH FINDING PURSUANT TO 11 U.S.C. §363(m)**<br><br>Hearing Date: April 17, 2023<br>Hearing Time: 11:00 a.m. |

I, Thom Seal, Ph.D., PE, do depose and say under the penalties of perjury:

1. I have personal knowledge of the facts stated herein, and if called to testify, I could and would testify competently to the best of my memory.

2. I am 72 years old and have a hearing disability.

3. I am married to Jette Seal ("Jette").

4. I have a PhD in Mining Engineering-Metallurgical Engineering and I am currently registered as a Nevada Professional Engineer.

5. I am a shareholder and the President of Metal Recovery Solutions, Inc. ("MRS" or "Debtor").

6. I am a shareholder and the President of Differential Engineering, Inc. ("DE").

7. Since at least 2009, I have studied, designed and ultimately developed a new heap leaching technology, which resulted in the invention of the patented Hydro-Jex® technology.

8. DE owns the patents for the Hydro-Jex® technology.

9. On April 5, 2023, I attended the hearing on the Trustee's Motion to Approve Sale of Claims and Other Bankruptcy Estate Assets, during which the Court held an auction of all assets of the Debtor's estate.

10. Prior to the hearing, my understanding was that Jex Technologies, Inc. ("JEX") had made the highest bid to buy the MRS assets in the amount of One Million, Two Hundred Thousand Dollars ($1,200,000.00).

11. There were three main bidders at the auction: JEX, Geo-Logic Associates, Inc. ("GLA") and Element Global, Inc. ("Element").

12. During the auction, once JEX's bid reached Two Million, Three Hundred Thousand Dollars ($2,300,000.00), JEX and I submitted joint bids until the price reached Two Million, Four Hundred Fifty Thousand Dollars ($2,450,000.00).

13. Element was the winning bidder with a bid of Two Million, Five Hundred Thousand Dollars ($2,500,000.00).

14. The Court designated the joint Two Million, Four Hundred Fifty Thousand Dollars ($2,450,000.00) bid from me and JEX as a backup in the event that the winning bidder, Element, failed to close the transaction (the "Back-up Bid").

15. I submitted the Back-up Bid in my individual capacity. My contribution to the Back-up Bid is One Hundred Fifty Thousand Dollars ($150,000.00).

16. I file this Declaration at the direction of the Court and in support of a good faith finding pursuant to 11 U.S.C. §363(m) in the event that the Court accepts the Back-up Bid as the winning bid.

17. In response to the Court's request that I file this Declaration setting forth my relationship with JEX, I declare the following:

   a. I, Jette and/or DE have never owned stock in JEX.
   b. I, Jette and/or DE have never attended a JEX stockholders' meeting, either in person, by telephone, by electronic means, or otherwise.
   c. I, Jette and/or DE have never attended a JEX Board of Directors meeting, either in person, by telephone, by electronic means, or otherwise.
   d. I, Jette and/or DE have no information related to JEX's financials, stockholders and/or investors.
   e. I, Jette and/or DE have not visited a JEX office or worksite.
   f. I, Jette and/or DE have not purchased any equipment, supplies or materials on behalf of JEX.
   g. I, Jette and/or DE have not loaned any funds to JEX.
   h. I, Jette and/or DE have never received a business proposal (draft or final) for any of JEX's operations at any site for a Hydro-Jex® project.
   i. I, Jette and/or DE have not participated in any JEX business decisions.
   j. Neither Jette nor I have a contract with JEX.
   k. The Technology Commercialization Agreement contemplated a separate consulting agreement between me and JEX that the parties never finalized or completed.
   l. Neither Jette nor I have ever had an employment contract with JEX.
   m. Neither Jette nor I have ever received funding or a salary from JEX.
   n. I did not meet David McMullins, Chief Executive Officer of JEX, approximately 2018 or 2019, and George Young, Principal of JEX, until 2019.
   o. In 2019, DE and JEX entered into the Technical License Agreement ("TLA"), which gave JEX a world-wide exclusive license to use the Hydro-Jex® technology in exchange for monthly payments.

p. Pursuant to the TLA, DE has received fees and a limited amount of reimbursement for travel expenses from JEX for and related to the patent and trademark license for the Hydro-Jex® technology.

q. Pursuant to the TLA, and as the representative of DE, my services have consisted of providing information to JEX employees regarding the technical aspects of the Hydro-Jex® technology. Each heap leach has unique physical, mineral, solution, chemical, and biological attributes; thus, in support of my role as the inventor of the Hydro-Jex® technology and as representative of DE, I have assisted JEX in analyzing data received from operating the Hydro-Jex® technology, offered my opinion on proper operating parameters to optimize the Hydro-Jex® recovery and performance and suggested that JEX perform certain laboratory experiments.

r. I have acted as the Chief Technology Officer ("CTO") of Jex, from 2019 to present. The position is honorary.

s. I am not listed as an officer of JEX with the Nevada Secretary of State.

t. I received no salary before and have not received any salary during my time acting as the honorary CTO.

u. My understanding of JEX's reason to give me this title was to assist JEX in marketing the technology that I invented and continue to invent through DE; however, I am not an employee of JEX with a salary or any other type of compensation.

18. Prior to the hearing and auction, I did not have any discussions with JEX representatives about joint bidding and/or a bid price.

19. During the auction, I had conversations with my attorney regarding a joint bid with JEX. These conversations are protected by the attorney-client privilege.

20. During the auction, I did not personally speak with any JEX representatives about joint bidding and/or bidding amounts.

21. During the auction, when JEX's bid reached $2,300,000.00, my attorney spoke with

JEX's attorney to relay an amount that I could contribute to a joint bid with JEX.

22. There is no agreement as to what assets I would receive in exchange for my $150,000.00 portion of the Backup Bid.

23. I have no agreement with Element about the assets it purchased from the estate as the winning bidder.

24. The bid I submitted in conjunction with JEX was in good faith, at arms-length and without collusion in the bidding process.

DATED this 12th day of April, 2023.

*Thom Seal*

Thom Seal, Ph.D., PE