Louis M. Bubala III (NV Bar No. 8974)
KAEMPFER CROWELL
50 West Liberty Street, Suite 700
Reno, Nevada 89501
Telephone: 775-852-3900
Facsimile: 775-327-2011
Email: lbubala@kcnvlaw.com

Ronald P. Oines (CA Bar No. 145016)
*Admitted Pro Hac Vice*
RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
Irvine, California 92612
Telephone: 714-641-5100
Facsimile: 714-546-9035
Email: roines@rutan.com,

Attorneys for Creditor Geo-Logic Associates, Inc.

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>METAL RECOVERY SOLUTIONS, INC.,<br>aka MRS, INC.,<br><br>Debtor. | Case No.: 20-50660-gs<br>Chapter 7<br><br>**MOTION TO COMPEL COMPLIANCE WITH SALE ORDER**<br><br>Hearing Date/Time:<br>Order for Shortened Time Requested |

After months of briefing, hearings and an open bidding process, all interested parties, represented by counsel, negotiated and submitted the "Order Approving Trustee's Motion To Approve Sale [etc.]," which was entered on May 5, 2023 (Dkt. 317.) Among other things, the sale Order required Element Global, Inc. ("Element") to pay the full purchase price within five business days of the sale Order becoming final and nonappealable. Element's deadline to pay was May 26. Element did not pay, and still has not paid, as ordered by the Court. Without leave of Court or consent of all parties, the Trustee has purported to give Element until June 30 to come up with the payment. Creditor Geo-Logic Associates, Inc. ("GLA") believes this violation of the Court's sale Order is improper and simply seeks to require all parties to comply with the sale Order.

GLA, by far the largest creditor, has been trying to collect on its Judgment against debtor Metal Recovery Solutions, Inc. ("MRS") for nearly four years. MRS had more than sufficient funds

to pay the Judgment, but instead of paying the Judgment, Thom Seal transferred money to himself and his wife and filed this bankruptcy proceeding in which he sought to put his other company Differential Engineering, Inc. ("Differential") ahead of GLA as a creditor. At every turn, Thom Seal and his companies MRS and Differential have sought to delay the ultimate resolution of this matter at the expense of GLA and MRS's other creditors. The latest delay tactics are being carried out with the help of Element and Jex Technologies, again at the expense of GLA and other creditors. GLA was and is fully prepared to close on its purchase of estate assets. Element and Jex were within their rights to make *legitimate* overbids, but it is becoming apparent that Element is unable or unwilling to close, and Jex is more than happy to just delay.

GLA requests an order declaring that (1) trustee was not authorized to extend the closing; (2) Element's rights expired by the terms of the sale Order; and (3) the trustee is required to immediately provide notice to trigger the purchase deadline for the backup bidder, a combined bid from Jex Technologies and Dr. Seal.

## FACTUAL & PROCEDURAL HISTORY

**The bankruptcy estate has always had assets to sell or otherwise monetize.**

Debtor filed this case in July 2020 after an unstayed $2.2 million judgment was entered against it in favor of GLA. *Geo-Logic Assocs., Inc. v. Metal Recovery Solutions, Inc.*, No. 17-00563-mmd (D. Nev.). Debtors had two primary assets, two specialized trailers and the estate's claims to recover funds from debtor's principals, Dr. and Mrs. Seal (Dkt. 1, Schedules; Dkt. 17, Notice of Assets). The claims were developed because GLA already filed a pre-petition action on them. *Geo-Logic Assocs., Inc. v. Metal Recovery Solutions, Inc.*, No. 20-00180-mmd (D. Nev.). That complaint, however, was stayed by the Trustee's assertion of the automatic stay, as he claimed the exclusive rights to pursue the transfers made by debtor to the Seals. *Id.* at Dist. Ct. Dkt. 43.

The Trustee filed his own complaint against debtor's principals in July 2021. *Burke v. Metal Recovery Solutions, Inc.*, A.P. 21-05066-gs. The Trustee held numerous discussions with GLA and other parties about monetizing the assets through the litigation, settlement or sales. Declaration of Louis M. Bubala III, filed contemporaneously. By December 2022, the Court expressed concern during a status hearing about the apparent lack of progress in the adversary.

**The Trustee was prepared to proceed with a sale/settlement, but the hearing was delayed.**

On February 2, 2023, hours before the next status hearing, the Trustee filed a Notice of Offer to Purchase Estate Assets by Jex Technologies (Dkt. 252). At the status hearing, GLA stated it was ready willing and able to overbid (Adv. Dkt. 82, Trans. at 8:11-13). The Court agreed to conduct a sale on March 24, 2023, and Dr. Seal and Differential agreed to participate remotely. *Id.* at 10-11.

The Trustee filed his sale motion on February 23, 2023 (Dkt. 255), with a hearing on March 24, 2023 (Dkt. 256). GLA became the stalking horse based on an overbid after the status conference. Dr. Seal and Differential's counsel changed position and decided they must attend the hearing in person (Dkt. 264). The Court rescheduled the hearing to April 5, 2023 (Dkt. 291).

**Elements appeared out of nowhere, winning the auction but delaying the closing.**

Days before the sale, Element appeared in the case (Dkt. 306). It attended the sale hearing, claiming to be a "cash bidder" who "understands" the sale terms (Dkt. 321, Trans. at 51:13-17). GLA objected to Element's participation since it was a new, unknown party with no known financial viability. *Id.* at 68:9-17. Yet when bidding was done, Element had the prevailing bid at $2.5 million, with a backup bid by Jex and Dr. Seal of $2.45 million. *Id.* at 98:7-17. As the Court noted, "Actions speak louder than words and a robust auction was held." *Id.* at 106:21-22.

However, Element requested the hearing be continued because it did not have a client representative to testify it was a good-faith purchaser. *Id.* at 99-101. The Court continued the

hearing to the next day, *id.* at 101:5-9, but Element's representative still was not available (Dkt. 323, Trans. at 4:15-25). The Court continued the hearing to April 17, 2023. *Id.* at 20:16.

The Court reconvened, heard testimony, and made the good-faith finding (Dkt. 324, Trans.). Element's counsel reaffirmed that she had "stated to my client … that it would have 19 days from the date of the entry of the sale order to make the $2.5 million payment to the trustee. And I'm informed that I will be getting the funds to pay my client trust account, and then I would be able to … wire them to the trustee … on … the appropriate day." *Id.* at 54:21:8.

The Trustee circulated his proposed order on April 11, 2023, including the Section 363(m) language. Bubala Dec. The prevailing and backup bidders did not approve the Order until May 3, 2023, and it was entered May 5, 2023, four weeks after the sale (Dkt. 317). Element had through May 26, 2023—19 days after entry of the Order—to close. *Id.* at 3:1-3. If Element did not close, the Trustee was to provide notice for Jex/Dr. Seal to close with five business days. *Id.* at 3:4-10.

**Element did not perform under the Order, but the Trustee unilaterally extended the closing.**

After 5 p.m., Friday, May 26, 2023, GLA called Trustee's counsel about the status. Bubala Dec. Element did not pay, but the Trustee extended the deadline through June 5, 2023. *Id.*

Trustee's counsel claimed the Trustee exercised his business judgment in extending the date to obtain $50,000 above the backup bid. *Id.* If the estate was solvent, the Trustee's duties extend to debtor's equity. *Id.* Trustee's counsel also indicated that the Order did not require him to provide immediate notice of default to trigger the backup bid. *Id.* Finally, counsel claimed that Jex/Seal agreed to close on the backup bid if Element did not. *Id.* Of course, the backup bidder already was required to perform under the Order if Element defaulted. *Id.* The obligation already existed, and the claimed consideration was illusory.

GLA objected on the call that the Trustee lacked authority to extend the deadline and that the Order required him to notify the parties to trigger the backup bid. *Id.* GLA further objected that the Trustee's duties are to the creditors, and that the extension—in mere hopes of additional funds—was contrary to his duties. *Id.* The sole beneficiaries of the extension and additional funds, if it is a solvent estate, are the administrative claimants and Dr. Seal. *Id.* While Trustee's counsel asserted he had minimized his billing to the estate, GLA responded the Trustee's counsel could and should bill the estate for his work. *Id.* The decision to not bill, GLA countered, does not justify the extension in hopes of additional funds. *Id.*

On Friday, June 2, 2023, the last business day before Element's deadline to perform under the purported extension, Element advised GLA that it did not have the funds to close on June 5, 2023. *Id.* It asked if GLA would stipulate to an additional extension with a daily payment of approximately $685 in interest until closing. *Id.* GLA rejected the proposal, noting it received no benefit from the additional funds. *Id.* On Monday, June 5, 2023, Trustee's counsel also advised GLA that Element did not have the funds and that the Trustee did not agree to a second extension, with one caveat. *Id.* The Trustee would consider an extension if Element made a deposit. *Id.* GLA still did not agree the Trustee could extend the time for performance, with a deposit or otherwise. *Id.*

On Tuesday, June 6, 2023, GLA asked when the Trustee would send the notice of default, triggering the backup bid. *Id.* The Trustee advised it again extended the deadline for Element, through June 30, 2023. *Id.* Trustee's counsel stated a non-refundable $50,000 cashier's check "has been sent to my office" by Element, and that Jex/Seal agreed to perform if Element did not (again, a requirement that already existed under the Order). *Id.*

On the morning of Wednesday June 7, 2023, GLA contacted the parties, asking them if they consented to a hearing on shortened time to compel compliance with the sale Order. *Id.* Later that afternoon, the Trustee file a notice of extension (Dkt. 328, clerical amendments at Dkt. 329). The notice does not seek Court approval, nor does it contain an agreement of all parties. *Id.* It contains a letter signed by counsel for Element, Jex and Dr. Seal, along with a check. *Id.* Both are dated June 6, 2023—a day after the Trustee's prior "extension" expired. (The prior writing was not filed with or approved by the Court.)

## ARGUMENT

Parties are bound by the terms of the Court's Order. *E.g., United Student Aid Funds, Inc. v. Espinoza*, 559 U.S. 260 (2009). If a party seeks to alter or amend an Order, it must move the court or appeal. *Id.* at 269-70 & n.9. The Trustee and parties did not seek to alter or amend the sale Order. To be sure, GLA expressly rejected the extensions. It only learned of the extensions after the fact; with the second extension, GLA already objected after learning of the first extension. Yet the Trustee still unilaterally extended the closing date.

The Bankruptcy Rules provide a simple path to request additional time from the Court. "When an act is required … within a specified period … by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1).

The Trustee never moved for additional time. The time for Element to perform expired by the terms of the sale Order on May 26, 2023. The Trustee did not seek additional time for the first extension, but simply granted it without obtaining authority or receiving consideration. Even

accepting the first extension for the sake of argument, the second extension expired June 5, 2023. The Trustee's notice—filed two days after the deadline, and not seeking court approval—also reveals that Element agreed to terms a day after the first extension expired and paid the alleged deposit two days after the first extension expired.

Given that the Trustee never sought court approval for additional time before the deadline in the Order, Rule 9006(b)(1)(2) no longer permits an extension *sua sponte*, but requires the Trustee to move showing "the failure to act was the result of excusable neglect." The Trustee has not moved. To the contrary, Trustee's counsel claimed the Trustee can extend the deadline using his business judgment. Bubala Dec. The rights and powers of Rule 9006 are well known and regularly used in this court on orders shortening time. LR 9006. The Trustee's decision to extend the time on his own, in conflict with the well know rule, is not excusable neglect. *See, e.g., Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380 (1993).

The Trustee's interests are distorted. Courts recognize that "a bankruptcy trustee owes a fiduciary duty to creditors and shareholders" in a surplus case. *In re Original IFPC Shareholders, Inc.*, 317 B.R. 738, 751 n.11 (Bankr. N.D. Ill. 2004). But "the duty to creditors takes precedence over the duty to shareholders as a result of creditors' legally superior interests under federal bankruptcy law." *Id.* The court, in granting a motion to dismiss, highlighted "Debtor's lack of creditors, other than insiders and its own professionals," and that "the rest of the creditor body in this case appears to consider primarily of investors." *Id., quoting In re St. Paul Self Storage L.P.*, 185 B.R. 580, 583 (BAP 9th Cir. 1995). In short, unsecured creditors matter.

Here, GLA makes up more than 97% of the unsecured claims among the three allowed claims (and the other two, debtor's former counsel). It allowed the sale to proceed, ultimately deferring to Element or Jex/Seal to determine the market value. Element defaulted. The Trustee did not consult

KAEMPFER CROWELL
50 West Liberty Street, Suite 700
Reno, Nevada 89501

GLA about an extension. The only parties consulted were Jex/Seal as the backup bidder. Neither is a creditor. The trustee does not owe them a fiduciary duty. Yet based on discussions with them and Element, the Trustee took away the choice of a closing or an extension from GLA and the Court. The extension is not in the best interest of the unsecured creditors. Contingent sale offers are routinely rejected in bankruptcy because they are uncertain and, thus, not the best and highest offer. Yet the Trustee is pursuing this path for the benefit of Dr. Seal—the source of all the problems and delay. He should not be rewarded with the Trustee's hopes of receiving an additional $50,000.

Judge Mosier held that "a debtor's entitlement to exempt or surplus property does not create a vast array of fiduciary duties running from the trustee to a debtor, nor does it oblige a trustee to act broadly in the debtor's best interests." *In re Christensen*, 598 B.R. 658, 669 & n.48 (Bankr. D. Utah 2019). A trustee has duty to maximize returns for creditors, "but no independent duty to generate sufficient proceeds to provide a surplus for the debtor." *Id.* at 669 n.48, *citing U.S. Trustee Handbook*. The court specifically focused on the property of the estate in the trustee's possession. *Id.* at 669 & n.49. Ultimately, "because the Trustee held no such proceeds, that duty never arose, and the Trustee could not breach a non-existent duty." *Id.* at 670.

In the present matter, Element defaulted on the sale Order. The Trustee owed no duty to Dr. Seal to try to get more money. The extensions are not warranted since they extend the closing nearly five months after the Trustee announced he was ready to proceed with a sale. If the sale has been completed at the original hearing on April 5, 2023, the payment would have been due April 24, 2023. Yet now, due to the hearing continuances, the delays in approving the form of order, and the trustee's extensions, another two months will elapse without a certain sale closing. The time has come to close the sale as Ordered by this Court, with Element defaulting and Jex/Seal required to close.

## CONCLUSION

GLA has diligently pursued its claims for nearly six years. GLA was and is prepared to close on its offer to acquire the assets. Although Element and Jex/Seal had a right to overbid GLA, they do not have the right to simply ignore this Court's Order regarding the process and timely closing of the sale. GLA simply requests that the parties comply with the sale Order, and that the court declare the extensions void and compel the Trustee to notice Jex/Seal of its deadline to buy the assets under its backup bid.

**DATED** on this 8th day of June, 2023.

KAEMPFER CROWELL

By: */s/ Louis M. Bubala III*
Louis M. Bubala III
Counsel for Geo-Logic Associates, Inc.