Louis M. Bubala III (NV Bar No. 8974)
KAEMPFER CROWELL
50 West Liberty Street, Suite 700
Reno, Nevada 89501
Telephone: 775-852-3900
Facsimile: 775-327-2011
Email: lbubala@kcnvlaw.com

Ronald P. Oines (CA Bar No. 145016)
*Admitted Pro Hac Vice*
RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
Irvine, California 92612
Telephone: 714-641-5100
Facsimile: 714-546-9035
Email: roines@rutan.com

Counsel for Geo-Logic Associates, Inc.

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>METAL RECOVERY SOLUTIONS, INC.,<br>aka MRS, INC.,<br><br>Debtor. | Case No.: BK-20-50660-gs<br>Chapter 7<br><br>**GEO-LOGIC ASSOCIATES, INC.'S MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE UNDER 11 U.S.C. § 503(b)(4)**<br><br>Hearing Date: October 6, 2023<br>Hearing Time: 1:30 p.m.<br>Hearing Location: Zoom |

**I.      INTRODUCTION**

Geo-Logic Associates, Inc. ("GLA") moves to allow its administrative expense for prosecuting objections to the claims of Differential Engineering, Inc. ("Differential"). The objections disallowed approximately $1.7 million in claims asserted by Differential, which is wholly owned and controlled by Dr. Thomas Seal, who also owns debtor Metal Recovery Solutions, Inc. ("MRS") with his wife. Thom Seal caused Differential to file the bogus claims in an attempt to further enrich the Seals and avoid the bulk of the liability owed to MRS' real creditors.

1  The Trustee recognized that it did not have the factual background or expertise to object to Differential's claims, given the technical nature of the underlying business and the long history between Dr. Seal, Differential and MRS. As a result, the Trustee agreed to allow GLA to pursue the objections, relying upon GLA's experience working with and litigating against debtor and related parties since 2015. Thanks to GLA's expertise and successful objection to Differential's claims, there followed a robust bidding process for MRS' assets that likely would not have occurred if Differential's claims had survived. This bidding process resulted in a sale of MRS' assets in the amount of $2.45 million, which represented a significant benefit for the entire estate and all of MRS' real creditors.

Differential asserted that its claims were secured. Therefore, had GLA not pursued the objections, Differential (i.e., Thom Seal) might have been entitled to receive approximately $1.7 million before any of MRS' real creditors received a penny. Even if Differential's claims were determined to be unsecured, MRS' real creditors would have received a significantly reduced percentage of the amounts of their claims. As a result of GLA's successful litigation of the objections, all of the creditors are going to be paid in full, plus interest.

It is true that GLA holds 97% of the unsecured claims, but the other creditors and Differential are the very reason that Judge Beesley found this was not a two-party dispute when he denied GLA's motion to dismiss. (ECF # 58.) Moreover, as set forth below, it is well-settled that a creditor is entitled to administrative expenses in providing a substantial benefit to the estate even if the creditor itself also benefitted. GLA's work clearly benefited the entire estate. It should be paid for its work that benefited all. The alternative—returning the entire

estate excess to debtor and distributed to the Seals as the principals—is offensive given that Dr. Seal was at the core of Differential's disallowed bogus claims.

## II. FACTUAL AND PROCEDURAL HISTORY

GLA is based in Southern California and has retained Rutan & Tucker LLP in Orange County for various matters over the past 17 years. GLA has been involved in litigation with debtor, its principal, Dr. Seal, and his related entity, Differential, since 2017. Rutan has been GLA's lead attorney throughout this litigation, and Ronald Oines has been the primary attorney throughout. (Oines Dec. ¶2.)

GLA obtained an award against MRS for more than $2,000,000 after a fully litigated arbitration proceeding that culminated in a three-day arbitration trial before retired U.S. District Judge Philip Pro. The underlying litigation included significant discovery into the claims made by MRS, including intellectual property claims, as well as the relationship among MRS, Differential and the Seals. U.S. District Judge Miranda M. Du entered Judgment on the arbitration, rejecting MRS' attempts to challenge the award. MRS appealed the Judgment and the arbitration award to the Ninth Circuit, but after full briefing by the parties, MRS filed this bankruptcy case. (Oines Dec. ¶2.)

Given Rutan and Mr. Oines' extensive knowledge of the facts and evidence relating to the disputes among the parties, it made sense for him to continue as GLA's primary attorney in this bankruptcy case, along with Louis Bubala of Kaempfer Crowell, local counsel in the arbitration and litigation. GLA's objections to Differential's claims involved complex intellectual property issues, including some of the intellectual property issues that were the subject of the

1 underlying litigation. The objections also involved factually and legally complex
2 issues relating to the relationship among MRS, Differential and the Seals. Mr.
3 Oines has an intimate knowledge of those issues and evidence relating thereto
4 based on his handling of the underlying litigation. (Oines Dec. ¶3.)

5     MRS filed this bankruptcy case to attempt to prevent GLA from collecting on
6 the Judgment. MRS' and Seal's efforts to prevent GLA and MRS' other creditors
7 from collecting included filing two secured proofs of claim on behalf of
8 Differential in the total amount of $1,737,565 (Cl. Reg. 2-3). If Differential's
9 secured claims withstood scrutiny, they would consume a substantial portion of the
10 estate's value. GLA and the other unsecured creditors were at risk of a substantial
11 discount to their claims, or their dividend payment would be diluted by nearly 50
12 percent if Differential was allowed only an <u>unsecured</u> claim. GLA's successful
13 prosecution and appellate defense of the claim objection removed Differential from
14 the creditor pool, allowing all unsecured creditors to receive payment in full plus
15 interest. (Oines Dec. ¶4.)

16     GLA believed that Differential's claims were improper for several reasons.
17 Therefore, on June 18, 2021, GLA filed its "Omnibus Objection to Claims of
18 Differential engineering, Inc. (Claim Nos. 2-3)" (ECF # 108.) (the "Objections").
19 (Oines Dec. ¶5.)

20     As explained in detail below and as shown in the redacted invoices attached
21 to the Oines Declaration as Exhibit A, GLA's Objections were hotly contested by
22 Differential, MRS and the Seals. To begin with, preparation of the Objections was
23 tedious and time-consuming. It involved gathering and reviewing a significant
24 amount of documents and testimony involving the relationship between

1  Differential and MRS, and the basis for the amounts claimed to be due and owing
2  to Differential. GLA's Objection included a detailed analysis of documentary
3  evidence and testimony to support its position that the claims by Differential were
4  bogus (ECF # 108).  (Oines Dec. ¶6.)
5      When GLA sought to take some discovery relating to its Objections,
6  Differential objected, claiming that GLA did not even have the right to proceed
7  with the Objections. This led to significant motion practice including a hearing that
8  should not have been necessary (*E.g.*, ECF #s 123, 136, 138). After hearing
9  Differential's motion, when the Court indicated that GLA could proceed with the
10 Objections, the parties stipulated that GLA would proceed with the Objections
11 (ECF no. 142, 143). (Oines Dec. ¶7.)
12     There was full briefing on GLA's Objections, and the Court held an initial
13 hearing on September 7, 2021 (ECF #s 144, 145, 146, 147). The Court ordered a
14 full evidentiary hearing to adjudicate Differential's claims and GLA's Objections
15 (ECF # 148). (Oines Dec. ¶8.)
16     After the hearing on September 7, 2021, GLA conducted depositions of
17 Differential and MRS.  Pursuant to the Court's Order, the parties filed
18 supplemental briefs, including GLA's supplemental initial and reply briefs in
19 support of its Objections (ECF #s 160, 169). (Oines Dec. ¶9.)
20     The evidentiary hearing was scheduled for three days. GLA prepared and
21 filed pretrial filings, such as witness and exhibit lists, and prepared for and
22 attended the three-day hearing, which occurred on November 15, 16 and 19, 2021.
23 After the hearing, pursuant to the Court's Order the parties prepared and filed post-
24 hearing briefs. Preparation of these briefs was time intensive, as it required a

KAEMPFER
CROWELL

detailed review of the documentary evidence and hearing transcripts. GLA's post-hearing briefs included detailed citations to the record as well as legal argument (ECF #s 198, 200). (Oines Dec. ¶10.)

The Court sustained GLA's Objections and disallowed Differential's claims in their entirety (ECF # 202). Despite having no reasonable legal or factual basis to overturn this Court's ruling on the Objections, Differential filed a Notice of Appeal, which dragged out the bankruptcy case and caused the parties to continue incurring significant fees relating to Differential's bogus claims (ECF # 205). GLA, of course, was required to incur significant fees regarding preparation of the appellate record and preparing an appellate brief, as well as prepare for and attend oral argument. The Bankruptcy Appellate Panel affirmed this Court's order disallowing Differential's claims in their entirety (ECF # 253). (Oines Dec. ¶11.)

### III.  ARGUMENT

#### A.  LEGAL STANDARD

Bankruptcy Code Section 503(a) allows an entity to timely file a request for payment of an administrative expense by the bankruptcy estate before payment to unsecured creditors. *E.g., Gill v. Tischman Constr. Corp. (In re Santa Monica Beach Hotel, Ltd.)*, 209 B.R. 722, 725 (BAP 9th Cir. 1997). There is no statutory deadline to request administrative expenses, and the Court has not set a deadline in this case to request administrative expenses. *In re Fresh Choice, LLC*, 2014 WL 929018, *3 (Bankr. N.D. Cal. March 10, 2014); *In re Pfankuch*, 2008 WL 5683489, *2 (Bankr. D. Idaho Nov. 17, 2008). Since it is now clear that there will be a surplus in this case, GLA has moved forward with this Motion to seek reimbursement.

1 "The Bankruptcy Court has broad discretion to grant administrative expense requests." *Garber v. National Union Fire Ins. Co.*, 2006 WL 190843, *7-8 (E.D. Cal. Jan. 23. 2006). The Court "is required to construe § 503(b) narrowly to keep costs to a minimum and preserve the limited assets of the bankruptcy estate for the benefit of the unsecured creditors." *Id.*; *In re Korn*, 352 B.R. 228, 241 (Bankr. D. Idaho 2006). However, in this case, all unsecured creditors will be paid in full even if GLA's Motion for administrative expenses is granted.

Section 503(b) provides for allowed administrative expenses after notice and hearing for a non-exhaustive list of circumstances, as the statute uses the term "including" before listing examples of allowable administration expenses. "The structure of section 503(b) is inconsistent with a restrictive interpretation of its list of administrative expenses; the statute states 'there shall be allowed administrative expenses, … including –' and then lists (in subsections (1)-(5)) a series of expenses." *United States v. Ledlin (In re Mark Anthony Constr., Inc.)*, 886 F.2d 1101, 1106 (9th Cir. 1989). Citing the "unambiguous general directive" with the broad statutory definition of "including" in Section 102(3), the Ninth Circuit held "that administrative expense statute's use of 'including' renders the *expressio unius* rule inapplicable to section 503. Thus … expenses not specifically listed in the section can be deemed administrative expenses." *Id.*

The holding of *Mark Anthony Construction*—that Section 503 provides a non-exhaustive reading of allowable administrative expenses—has been reached and followed in the Circuit before and since the decision. *In re Megafoods Stores, Inc.*, 163 F.3d 1063, 1071-72 (9th Cir. 1998); *In re Madden*, 185 B.R. 815, 816-17 (BAP 9th Cir. 1995); *In re McGrew Bros. Sawmill, Inc.*, 107 B.R. 296 (D. Or.

1989); *In re United Educ. & Software*, 2005 WL 6960237, *7 (BAP 9th Cir. Oct. 7, 2005); *In re Maust Transport, Inc.*, 589 B.R. 887, 898 (Bankr. W.D. Wash. 2018); *In re Maqsoudi*, 566 B.R. 40 (Bankr. C.D. Cal. 2017); *In re 800Ideas.com, Inc.*, 527 B.R. 701 (Bankr. S.D. Cal. 2015); *In re Lazar*, 207 B.R. 668, 674 n.11 (Bankr. C.D. Cal. 1997); *In re Ridgewood Sacramento, Inc.*, 20 B.R. 443, 447-48 (Bankr. E.D. Cal. 1982).

This expansive interpretation allows a range of administrative expenses in Chapter 7 cases. "Administrative expenses not expressly enumerated in § 503 may, under some circumstances, be deemed administrative expenses under this provision. … For this reason, administrative expenses under § 503(b)(3)(D) may be allowed in a chapter 7 case under Ninth Circuit precedent." *In re Treasure Valley Marine, Inc.*, 2020 WL 6821789, *13-14 (Bankr. D. Idaho Oct. 15, 2020). "The modern trend appears to be to allow administrative expenses under a substantial contribution theory, even in cases filed under Chapters other than 9 and 11." Gabrielle G. Palmer & Anne M. Zoltani, Recent Developments, 2018 *Norton Annual Survey of Bankruptcy Law* 30 * nn.197-98 (citing cases).[1]

"The principal test for whether services provided a substantial contribution to a bankruptcy case is gauged by examining the extent of the benefit bestowed by those services to the bankruptcy estate as a whole." *Treasure Valley*, 2020 WL 6821789, *14, *citing Christian Life Ctr. Litig. Def. Comm. v. Silvo (In re Christian Life Ctr.)*, 821 F.2d 1370, 1373 (9th Cir. 1987).

---

[1] Ms. Zoltani is clerk of the U.S. Bankruptcy Appellate Panel for the 10th Circuit. Ms. Palmer is a bankruptcy attorney in Colorado.

1  Even a creditor that acts in its own interest may be entitled to reimbursement
2  of administrative expenses, as long as the creditor's actions benefitted the estate.
3  *In re Cellular 101, Inc.*, 377 F.3d 1092, 1096–97 (9th Cir. 2004); *In re Celotex
4  Corp.*, 227 F.3d 1336, 1338 (11th Cir. 2000) ("Examining a creditor's intent
5  unnecessarily complicates the analysis of whether a contribution of considerable
6  value or worth has been made."); *Matter of DP Partners LP*, 106 F.3d 667, 673
7  (5th Cir. 1997) ("a creditor's motive in taking actions that benefit the estate has
8  little relevance in the determination whether the creditor has incurred actual and
9  necessary expenses in making a substantial contribution to a case.").

### B. GLA'S SUCCESSFUL LITIGATION OF THE OBJECTIONS TO DIFFERENTIAL'S CLAIMS PROVIDED A SUBSTANTIAL CONTRIBUTION TO THE ESTATE

By pursuing the objections to Differential's claims at the request and with approval of the Trustee, GLA provided a substantial contribution. If Differential's secured claims survived, there likely would not have been a robust bidding process, including because GLA would not have bid if all or most of the money to purchase the debtor's assets would have gone to Differential and Thom Seal. By participating in the bidding, GLA caused Differential/Seal, and Jex Technologies (another company with whom Thom Seal is working) to significantly increase what they otherwise would have had to pay for Debtor's assets. The bidding process resulted in an amount that is sufficient to pay all creditors in full with interest, and leaves a significant surplus.

And even if one believes the assets would have sold for $2.45 million regardless whether Differential's $1.7 million claim had survived, by eliminating

1  Differential's claims, GLA's efforts have ensured that all *real* creditors will be
2  paid in full plus interest. Had Differential been entitled to the first $1.7 million as a
3  secured creditor, the other creditors would have received a small percentage of
4  their claims. Even if Differential's claims had survived, but only as unsecured, the
5  other creditors still would have obtained a significantly reduced amount on their
6  claims. It is not reasonably disputed that GLA provided a substantial contribution.

In *In re Cellular 101, Inc.*, the Court awarded the reimbursement of a creditor's attorneys' fees as administrative expenses because the creditor formulated and presented a reorganization plan that resulted in full payment to creditors and had waived prepetition claims against the debtor. The Court rejected the argument that the creditor should not be allowed to recover under section 503(b) because the creditor acted in its own self-interest. 377 F.3d at 1097-98 ("Any concern we have about evidence that [the creditors] benefitted from their own efforts is outweighed by the extent of the benefit those efforts conferred on the estate.")

In *In re Celotex Corp.*, the Court awarded the reimbursement of a creditor's attorneys' fees because of the substantial contribution the attorney made in negotiating a successful reorganization plan. Again the Court rejected an argument that the creditor should not be awarded administrative expenses because the creditor was acting in its own self-interest. 227 F.3d at 1339-40.

In this case, because of GLA's successful efforts to eliminate Differential's bogus claims, all creditors will be paid in full with interest, and there will be a surplus. If GLA is not reimbursed for its necessary expenses incurred in objecting to Differential's claims, then Differential's owner, Thom Seal will reap the benefit

of GLA's efforts. Yet Thom Seal is the person solely responsible for filing Differential's bogus claims in the first place, which required lengthy and hard fought litigation regarding those claims. GLA should be reimbursed for its fees incurred in pursuing the objections before Thom Seal should obtain any of the surplus resulting from GLA's efforts. See, e.g., *In re 1910 Partners*, 2016 WL 3356564, *11 (Bankr. D. Hawaii June 8, 2016) ("As a court of equity, and given [creditor's] substantial contribution and the conduct of [debtor, creditor] is entitled to the allowance and award of $567,000 in post-petition professional fees as an 11 U.S.C. § 503(b)(4) administrative expense . . . .")

Thom Seal caused MRS to file this bankruptcy case in an effort to avoid paying MRS' creditors. As part of that effort, Thom Seal also caused Differential to file the bogus claims. GLA incurred significant expense at the request and with the approval of the Trustee to eliminate Differential's bogus claims so that all of MRS' ***real creditors*** could be paid in full with interest. GLA's efforts also exposed Thom Seal's duplicity and improper conduct in connection with Differential's claims.[1] It would be improper to reward MRS and Thom Seal for GLA's efforts in

---

[1] For example, GLA established that Thom Seal caused MRS to distribute more than one million dollars to him and his wife at a time when he claimed MRS did not have money to pay its supposed creditor, Differential. (ECF #202, pg. 16.) In the Court's ruling on GLA's objections to Differential's claims, the Court noted that Thom Seal's testimony was "evasive and unpersuasive." (ECF #202, pg. 17.) In addressing particular inconsistencies in Thom Seal's sworn testimony, the Court stated that it "finds this to be mere sophistry." (*Id*.) The Court also noted that Thom Seal was manipulating MRS' payments to Differential in an effort to make it appear that MRS was not in default so that MRS could have a "good record of payment" when it came time to try to sell MRS or enter into a joint venture. The Court noted that "[t]he intentional manipulation of MRS's payment obligations would be tantamount to commercial fraud by any third party that considered MRS's finances." (*Id.* at pg. 18.)

eliminating Differential's bogus claims. GLA should be reimbursed for its administrative expense incurred to eliminate Differential's claims for the benefit of all of the real creditors before MRS' shareholders (i.e., the Seals) receive any benefit.

### C.   THE EXPENSES SOUGHT BY GLA ARE REASONABLE AND SHOULD BE AWARDED

#### i.   Rutan & Tucker's fees should be awarded.

Mr. Oines is and has been the primary attorney representing GLA in this matter. The work related to GLA's Objections was done in 2021 and 2022. His normal hourly rate in those years was $650 and $690, respectively. However, as a courtesy to GLA, Rutan provided an across the board 5% discount on its firm's fees for this matter starting in around 2019. So GLA was billed for time at $617.50 per hour in 2021 and $655.50 per hour in 2022. GLA has paid all invoices in full for those years. (Oines Dec. ¶12.)

Attached to Mr. Oines' Declaration are copies of actual invoices counsel sent to GLA. The original invoices included time for all work relating to the bankruptcy case and GLA's overall dispute with the parties. Some of this work was not directly related to the Objections. Therefore, Rutan has redacted from the original invoices all time entries that were not directly related to GLA's Objections. Rutan has also removed the time billed for all but the remaining time entries. For days in which all of the work was directly related to the Objections, the billed hours in the attached invoices are the same as on the original invoices. For days in which some of the work was directly related to GLA's Objections, time entries that were not directly related to GLA's Objections have been redacted, and

1  the hours have been reduced to reflect only time directly related to the Objections.
2  Therefore, the detailed time entries in the redacted invoices reflect only time that
3  was directly related to litigating the Objections, and the amounts reflected are only
4  amounts that were directly related to litigating the Objections. (Oines Dec. ¶13.)
5      Rutan has had assistance from others in the firm with respect to this matter,
6  including on issues that were directly related to the Objections. Although Rutan
7  believes GLA should be entitled to reimbursement for fees for those other
8  professionals as well, since Mr. Oines has been the primary attorney with by far
9  the most significant amount of work, it has not including time for those
10 professionals in an effort to streamline this process. (Oines Dec. ¶14.)
11     In addition to the summary above of the various work that was performed
12 relating to the Objections, the time entries attached show further detail of exactly
13 what work was performed, billed and paid, and the amounts therefor. The total
14 number of hours invoiced for all of the work in the attached was 170.2 hours in
15 2021 at the hourly rate of $617.50 and 51.8 hours in 2022 at the rate hourly rate of
16 $655.50. Thus, **the total invoiced and sought for services rendered by Rutan** is
17 $105,098.50 (for 2021) + $33,954.90 (for 2022) = **$139,053.40.** (Oines Dec. ¶15.)
18     Based on Mr. Oines' level of experience and the complexity of the litigation
19 involving the Objections, GLA believes the hourly rates set forth above and
20 reflected in the invoices and the number of hours billed are reasonable. (Oines Dec.
21 ¶16.) Mr. Oines has been practicing law, mostly in California, for more than 33
22 years. He was previously admitted in Texas and has been admitted *pro hac vice* in
23 numerous federal courts throughout the United States, including this Court and the
24 United States District Court in Nevada.(Oines Dec. ¶17.)

1     Mr. Oines' practice has focused on intellectual property litigation and other complex litigation. He was the lead attorney in the underlying litigation in which GLA obtained a Judgement against MRS. As noted above, that litigation involved complex intellectual property and other issues. Given that many of the complex intellectual property and other issues carried over in this bankruptcy case, and GLA's Objections in particular, it made sense for Mr. Oines to remain as the lead attorney in the bankruptcy case. (Oines Dec. ¶18.)

    Mr. Oines is generally familiar with the rates charged by intellectual property litigators based in Southern California, and based thereon, understand that $690 an hour for an intellectual property litigator with 33 years' experience is lower than most, particularly for a firm the size of Rutan (approximately 140 attorneys). For example, a District Court in the Central District of California recently found in an intellectual property case that an hourly rate of $810 was reasonable for an attorney with 15 years of experience. The Court referred to a Thomson Reuters Public Rates Report that showed hourly rates for attorneys in the Central District of California ranging from $320 to $1,145 depending on seniority. *Notorious B.I.G. v. Yes. Snowboards*, 2023 WL 4681570, *5 (C.D. Cal. June 6, 2023). (Oines Dec. ¶19.)

    GLA understands, however, that the Court will also likely consider the invoices in this case in light of reasonable rates in Nevada, and that the Court may look to what other Courts in this District have found to be reasonable. (Oines Dec. ¶20.)

    GLA understand many District and Bankruptcy Courts in Nevada have found hourly rates ranging from approximately $600 to approximately $800 to be

1  reasonable. See, e.g., *U.S.A. Dawgs, Inc. v. Crocs, Inc.*, 2019 WL 2291457, *4 (D.
2  Nev. May 29, 2019) (Court found hourly rates up to $807.70 were reasonable);
3  *Bird-B-Gone, Inc. v. Haierc Ind. Co.,* , 2018 WL 4682320, *5 (D. Nev. Sept. 28,
4  2018) (Court found hourly rates up to $600 were reasonable); <u>SATA GmbH & Co.
5  KG v. NingBo Genin Indus. Co.</u>, 2018 WL 1796296, *2 (D. Nev. April 162018)
6  (Court noted that rates up to $675 an hour are reasonable for intellectual property
7  litigation in Nevada); <u>Rubbermaid Commercial Prod., LLC v. Tr. Commercial
8  Prod.</u>, 2014 WL 4987878, *8 (D. Nev. Aug. 22, 2014) (Court approved hourly
9  rates up to $624.75 in intellectual property case).

Given the complexity of this bankruptcy matter, which included complex intellectual property issues and complex issues relating to the relationship among MRS, Differential and the Seals, and the results obtained, which results benefitted all creditors and the Trustee, GLA believes the hourly rates and the number of hours spent is reasonable. (Oines Dec. ¶21.)

**ii. Kaempfer Crowell's fees should be awarded.**

As detailed in the contemporaneously filed declaration of Louis M. Bubala III, Kaempfer Crowell and Mr. Bubala have been Nevada and bankruptcy counsel to GLA since 2017, both in the pre-petition litigation, arbitration and appeal, and in the bankruptcy case and bankruptcy appeal. The work related to GLA's Objections was done in 2021 and 2022. Mr. Bubala billed at the hourly rates of $435 and $460, respectively; an associate did limited work at the rate of $275 per hour; and two paralegals billed $210 and $195 per hour. (Bubala Dec. ¶7.)

As with Rutan & Tucker, Kaempfer Crowell's relevant invoices are attached and redacted to reflect only work done and billed for on the Objections. The

demonstrative table attached in front of the invoices shows the firm **worked 279.7 hours on the Objections for a total of $103,551 in fees.** The blended rate was $347.84 per hour for the work done by the firm. GLA has paid in full all of its invoices from Kaempfer Crowell, including all the work by the firm detailed here on the Objections. (Bubala Dec. ¶8.)

Based on Mr. Bubala's level of experience and the complexity of the litigation involving the Objections, GLA believes the hourly rates set forth above and reflected in the invoices and the number of hours billed are reasonable. Mr. Bubala have been practicing law, mostly in Nevada, for 19 years. A large majority of his work has involved business bankruptcy. Based on his personal knowledge of the billing rates of fellow business bankruptcy attorneys in Nevada, his rate at below $500 per hour—and the firm's blended rate below $350 per hour—is well within the rates approved in bankruptcy proceedings for estate expenses in complex commercial disputes. (Bubala Dec. ¶11.)

### IV. CONCLUSION

In light of the foregoing, GLA requests an Order awarding reimbursement for administrative expenses in the amount of $242,604.40, based on $139,053.40 incurred by Rutan & Tucker and $103,551.00 incurred by Kaempfer Crowell.

Dated September 8, 2023

| KAEMPFER CROWELL | RUTAN & TUCKER LLP |
|---|---|
| */s/Louis M. Bubala III* | */s/Ronald P. Oines* |
| Louis M. Bubala III | Ronald P. Oines |

Counsel for Geo-Logic Associates, Inc.